*Decisions will be entered under Rule 50.*

HYDE PARK REALTY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37249. Promulgated April 10, 1953.

44

*Paul V. Wolfe, Esq.*, for the petitioner.
*Robert McDonough, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* The issues raised by the pleadings are: (1) whether the sum of $3,138.62 collected by the petitioner within the fiscal year ended January 31, 1948, but representing rents paid in advance for a period beyond the end of the fiscal year is properly includible in income during the taxable year ended January 31, 1948, and (2) whether the sum of $8,724.06, which was collected by petitioner's predecessor in title and which represents rents covering a period beginning February 14, 1947, and extending on into that year and which was credited by the seller against the purchase price, was income to the petitioner in the fiscal year ended January 31, 1948.

*Issue 1.*

We think Issue 1 must be decided in favor of respondent on the authority of *Palm Beach Aero Corporation,* 17 T. C. 1169. In that case, among other things, we said:

The respondent in his pleadings alleged that the entire advance rental in the amount of $50,000 received by the petitioner from Gulf Oil Corporation during the years 1946 to 1948 was taxable income in 1946, but on brief concedes that only $39,287.07, the sum received in 1946, constitutes taxable income in that year. The petitioner does not deny the well established rule that prepaid rent which, as here, is received under a present claim of full ownership and subject to the lessor's unfettered control, is taxable income upon receipt. *Gilken Corp.,* 10 T. C. 445, affd. 176 F. 2d 141; *Hirsch Improvement Co.* v. *Commissioner,* 143 F. 2d 912, certiorari denied 323 U. S. 750; *Astor Holding Co.* v. *Commissioner,* 135 F. 2d 47; *Renwick* v. *United States,* 87 F. 2d 123; *Commissioner* v. *Lyon,* 97 F. 2d 70, but nevertheless argues the payments are not taxable income because they were applied to the cost of constructing a hangar to which it never at any time had title. * * *

We find no merit in the petitioner's argument. The sums paid by the Gulf Oil Corporation to the petitioner were paid as rental pursuant to the agreement entered into with the petitioner. The fact that the petitioner saw fit to use the sums to finance the construction of a hangar cannot change the fact that they constituted rental income when received. We, therefore, hold that the sum of $39,287.07 received from the Gulf Oil Corporation in 1946 was taxable income to the petitioner in that year.

Under the facts in the instant case, we would be unable to distinguish *Palm Beach Aero Corporation, supra,* on Issue 1. This issue is decided in favor of respondent.

*Issue 2.*

Petitioner contends that if we decide Issue 1 in respondent's favor, logic should cause us to decide Issue 2 in petitioner's favor. In

discussing this contention in its brief, petitioner says, among other things:

if the Court should decide that the rule stated in Palm Beach Aero Corp., 17 T. C. 1169, and cases cited therein, is applicable to such prepaid rents and that such rule takes precedence over conventional and sound accounting practice, then the prepaid rents in the sum of $8,724.06 received by the taxpayer's predecessor in title to the premises constituted income not to the taxpayer but to the taxpayer's predecessor in title under the rationale of the Palm Beach Aero Corp. case (supra) in which income is held to arise upon receipt rather than the period to which it relates. The fact that taxpayer received an adjustment for said item on the closing of title indicates only that there was an adjustment of the purchase price and not that the said income of the predecessor in title was assigned to taxpayer.

We are unable to agree with petitioner that the $8,724.06 credit which petitioner received in the settlement for rents, which was effected upon the closing of title, represented an adjustment of the sale price. It has been stipulated that:

4. The contract of purchase provided that rents should be apportioned between the parties as of the closing of title and in accordance with said contract at the closing of title petitioner, as purchaser, received as a credit the sum of $8,724.06 for rents received by the seller before the closing of title and relating to the taxable period subsequent to the closing of title.

Can there be any doubt as to what this $8,724.06 represented? We do not think there can be any doubt but that it represented rents. It represented rents paid over to petitioner to cover its period of ownership of the property beginning with February 14, 1947. It is true that the seller had already collected these rents from the tenant in advance and if the seller had remained the owner of the property, it would have had to include the entire amount of this prepaid rent in its taxable income in the year when it was collected. *Palm Beach Aero Corporation, supra.* But the seller did not remain the owner of the property but sold it to petitioner and in the agreement of sale agreed to apportion the rents with petitioner, the purchaser. That has been done, and it seems to us that the $8,724.06 in a real sense represents rents which petitioner received in its fiscal year ended January 31, 1948, and did not represent a reduction in the purchase price. The fact that the $8,724.06 was used in the settlement at the closing of title as a credit on the payment of the purchase price does not change the incidence of the tax. *Palm Beach Aero Corporation, supra.*

It just so happens that petitioner received in its first taxable year ending January 31, 1948, both of these rental payments, one of $8,724.06 and the other the advance payment of $3,138.62, and we think that under the doctrine of *Palm Beach Aero Corporation, supra,* petitioner is taxable on both payments. We so hold.

*Decision will be entered for the respondent.*