**KOHLER–CAMPBELL CORPORATION,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 8361.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 10, 1961.

Decided Jan. 4, 1962.

Thomas A. Litsch, New York City (Frank C. Patton, Morganton, N. C., and Kenneth F. Clark, New York City, on the brief) for appellant.

John F. Murray, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum and Richard J. Heiman, Attys., Dept. of Justice, Washington, D. C., and Hugh E. Monteith, U. S. Atty., Sylva, N. C., on the brief) for appellee.

Before BOREMAN, BRYAN and BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

This is an appeal from a judgment of the District Court involving a deficiency in Federal income tax for the year 1954. The question for decision is whether the sum of $15,000.00 received by the taxpayer in 1954 was taxable to it as income of that year.

During the Spring and Summer of 1954, Kohler & Campbell, Inc., a New York corporation engaged in manufacturing pianos and organs, sought a new manufacturing site. It located a satisfactory site in North Carolina and entered into an agreement to lease the property from its owners. The taxpayer, Kohler-Campbell Corporation, was incorporated on October 19, 1954, under the laws of North Carolina by the same individuals who were the stockholders of Kohler & Campbell, Inc., for the purpose of executing the proposed lease as provided in the agreement. The lease was for ten years from November 1, 1954; it provided for an annual rental payable monthly in advance beginning December 1954; it also provided that the rent for the final twenty months of the lease should be paid in advance on or before December 1, 1954. Immediately after executing this lease, the taxpayer entered into a sublease with Kohler & Campbell, Inc., its New York affiliate. This sublease covered the same property for the same period of time, and although it did not specifically provide for the prepayment of rent, it was made subject to all of the terms of the principal lease.

At the time of executing the principal lease, the New York Corporation issued its check for $15,000.00 (the amount of the prepayment) to its North Carolina affiliate, which in turn endorsed the check over to its landlord in compliance with the terms of the original lease.

In compliance with the agreement of the parties, this check was endorsed over to escrow agents for the exclusive purpose of paying off certain outstanding liens on the leased property. Contemporaneous documentary entries, including Kohler & Campbell, Inc.'s check voucher, the financial statements of the two affiliated corporations, and their 1954 tax returns, dealt with the transaction very sketchily, referring to it as "advance covering lease", "prepaid expenses and supplies", and "prepaid rent". The taxpayer kept no books or records other than a check book until 1956. It had only nominal assets when incorporated and no source of income other than rent from the sub-lessee.

In August 1956, a revenue agent audited taxpayer's 1954 return and advised that he would treat the $15,000.00 item as gross income. The resulting tax was paid, and after claim for refund was denied this suit was instigated. The taxpayer makes three contentions with respect to the payment: first, that it was a loan from the New York corporation to its North Carolina affiliate; second, that even if not a loan the money was received by the taxpayer under such restricted terms that it did not constitute income to it in 1954; and third, that even if the payment were income to the taxpayer, nevertheless by the very terms of its payment the taxpayer incurred an offsetting

obligation of equal amount and thus incurred no tax in that year with respect to this sum.

 Counsel for the Appellant has eloquently argued that there was no business reason for the New York affiliate to treat the transaction in any way other than as a loan and certainly not as a prepayment of rent. The corporate officers testified that the contemporaneous documentary entries were erroneous and that the transaction was in fact a loan, but the difficulty is that these declarations reflect hindsight and no evidence exists of a contemporaneous nature pointing to a loan. No note was executed, no interest was specified or collected and the financial records did not provide for such. The testimony of Mr. Clayton, Treasurer of the taxpayer and President of Kohler & Campbell, Inc., was to the effect that no repayment was contemplated by the parties. The nature of advances to closely held corporations is determined by the intention of the parties. No single test can provide an answer. Arlington Park Jockey Club, Inc. v. Sauber, 262 F.2d 902, 905 (7 Cir. 1959); Gilbert v. Commissioner, 248 F.2d 399, 406 (2 Cir. 1957). "It has been repeatedly held that one of the fundamental characteristics of a debt is a definite determinable date on which the principal falls due." Brown-Rogers-Dixson Co. v. Commissioner, 122 F.2d 347, 350 (4 Cir. 1941). In short the record was either silent or in conflict with the intentions subsequently claimed by the corporate officers. Under the circumstances we cannot say that the trier of fact was clearly erroneous in its conclusion, Fed.R.Civ.P. rule 52(a), 28 U.S. C.A. This possibility being eliminated, we are left with the necessity of treating the transaction as a prepayment of rent, and therefore includible in gross income for the year received. Internal Revenue Code of 1954, § 61(5) 26 U.S.C.A. § 61 (5). Astor Holding Co. v. Commissioner, 135 F.2d 47, 146 A.L.R. 993 (5 Cir. 1943).

 Counsel for the Appellant contends that the restrictions placed on the use of the money in the taxpayer's hands constitutes it an exception to this rule. The difficulty with this argument is that the so-called restrictions in fact allowed the taxpayer to make the maximum beneficial use of the funds at once; to-wit, to pay its own debt. Whether the transaction is treated as a direct payment to the owner-landlord by the New York corporation or as passing through the taxpayer is immaterial. "It cannot be questioned that the payment of a taxpayer's indebtedness by a third party pursuant to an agreement between them is income to the taxpayer." Wall v. United States, 164 F.2d 462, 464 (4 Cir. 1947) and cases there cited. There is nothing here in the nature of a restraint which in any way prevented a highly beneficial use of the money by the taxpayer to be made immediately. This was not a deposit or security on which the payor retained any strings which would return the money to him upon a condition subsequent. The taxpayer received the payment with a great deal more than a "claim of right", he received it with the express understanding that it was to be used for his immediate beneficial interest. The cases cited by taxpayer are clearly not in point. See New Capital Hotel, Inc. v. Commissioner, 261 F.2d 437 (6 Cir. 1958).

 Finally, the taxpayer is not entitled to a deduction for the payment over of this sum to its landlord, not only because it has not until now raised the issue but because it is clear from the record that this was not a current operating expense within the meaning of Section 162(a) (3) of the Code, 26 U.S.C.A. § 162(a) (3). Not only was the payment part consideration for a ten year lease, the taxpayer also acquired an option under which, if exercised, the payment was to be credited on the purchase price. See Baton Coal Co. v. Commissioner, 51 F.2d 469 (3 Cir. 1931), Wolan, et al. v. Commissioner, 184 F.2d 101 (10 Cir. 1950).

However regrettable the results may be to the parties, we cannot ignore the existence of the North Carolina corporation as a corporate entity, nor can the courts overlook the plain inferences to be

drawn from contemporaneous acts and records.

The judgment of the District Court is affirmed.

Affirmed.