SUPERMARKETS GENERAL
CORPORATION, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 81–665.

United States District Court,
D. New Jersey.

April 16, 1982.

Pitney, Hardin, Kipp & Szuch by Gregory C. Parliman, Morristown, N.J., Hughes, Hubbard & Reed by David Tillinghast (Argued), New York City, for plaintiff.

Steven T. Lyons (Argued), Tax Division, Dept. of Justice, Washington, D. C., for defendant.

HAROLD A. ACKERMAN, District Judge.

This is a suit against the United States for refund of certain taxes paid for the fiscal years ending in 1970, 1971, 1972, 1973 and 1974. The plaintiff, Supermarkets General Corporation ("SGC"), operated through its Pathmark and Rickels divisions, over one hundred retail stores. During the relevant tax years, the plaintiff was subject to numerous claims of personal injuries and property damage made by its customers. As an accrual basis taxpayer, it sought to deduct as an accrued liability the amount of its maximum uninsured exposure on these claims during the tax years 1971, 1972 and 1973.

In 1971 the Internal Revenue Service ("IRS") disallowed the accrued liability except to the extent that the claims had been satisfied during the tax year, and increased SGC's taxable income accordingly. In 1972 and 1973, SGC claimed a deduction only with respect to claims actually satisfied during those taxable years but requested leave to amend its returns to increase its accrued liability up to its maximum exposure. These requests were denied. Administrative claims for refunds were properly filed and plaintiff filed this suit within two years of notification that the claims were being disallowed.

The case is before me today on cross-motions for partial summary judgment. Plaintiff seeks a judgment that it may properly determine its accrued liability on the basis of the aggregate of the personal injury and property damage claims rather than on a claim by claim basis. Defendant moves for partial summary judgment on the basis that, as a matter of law, the Commissioner did not abuse his discretion in finding that the plaintiff's deduction of its maximum exposure as an accrued liability in each of the relevant tax years was improper. For the reasons which I will set forth below, I have determined that neither motion will be granted, and that plaintiff may prove at trial, if it desires, its right to an accrued liability for each unsettled claim. Summary judgment is appropriate only if, after giving the non-moving party the benefit of all reasonable factual inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See DeLong Corp. v. Raymond International, Inc., 622 F.2d 1135 (3d Cir. 1980). In this case, the principal facts are not disputed.

In 1971, 1972 and 1973, plaintiff operated 106, 112, and 118 retail supermarket and home center stores respectively. These stores were patronized by millions of customers and during the course of each of these years, some of these customers filed claims for incidents arising out of their patronage of the stores. In 1971, 4087 such claims were reported; in 1972, 5018 claims were reported; and in 1973, 5301 claims were reported.

SGC was, to some extent, a self-insurer with respect to these claims. Under an insurance policy issued by Insurance Company of North America ("INA"), SGC was responsible for the first $10,000 of losses per incident up to a scheduled maximum amount based upon a percentage of SGC's gross sales. Losses in excess of the maximum cap were covered by INA. INA did not handle the processing of these claims. Instead, plaintiff employed a professional claims adjuster service, Employers Self Insurance Service ("ESIS"), to establish claims files, and to investigate, evaluate and process the claims. Among other powers, ESIS was authorized by plaintiff to settle claims between $2,000.00 and $10,-000.00, and to notify the excess carrier (INA) if the claim appeared to be of a value in excess of $10,000.00.

Based on its gross sales for the tax years in question, the maximum uninsured loss for which the plaintiff could be liable was:

1971: $1,027,644.00
1972: $1,236,939.00
1973: $1,422,012.00

At year end, for each of these years, the total amount of the satisfied and/or estimated claims exceeded the maximum self-insurance exposure. From the vantage point of hindsight, it cannot be disputed that the plaintiff actually expended the maximum amount on the claims which arose in each of these years. INA was notified on January 9, 1976, that the maximum amount had already been reached, thereby triggering the excess coverage.

The parties do not dispute that plaintiff is entitled to deduct these uninsured losses. The issue presented in this case is the timing of the deductions. Nor do the parties disagree as to what legal principles govern. The parties only disagree over the application of these general legal principles to the facts of this case.

■ A taxpayer is required to use the same method of accounting for computing deductions and taxable income as it uses for its business accounts. 26 U.S.C. § 446(a). However, that general rule is subject to the following exception:

If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the secretary or his delegate, does clearly reflect income.

26 U.S.C. § 446(b). The Commissioner, therefore, has broad discretion under the Code to determine whether accounting methods clearly reflect income. The exercise of this discretion must be upheld unless clearly erroneous or without adequate basis in the law. See Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532, 99 S.Ct. 773, 780, 58 L.Ed.2d 785 (1979); RCA Corp. v. U.S.A., 664 F.2d 881 (2d Cir. 1981).

■ The basic rule for determining in which year a deduction should be taken is found in 26 U.S.C. § 461(a) IRS Code of 1954:

The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income.

For taxpayers using an accrual method of accounting, the regulations set forth a test known as the "all events" test, originally articulated by the Supreme Court in United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926), for determining the proper taxable year. 26 C.F.R. § 1.461–1(a)(2). That regulation states in pertinent part:

Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy.

The "all events" test therefore has two prongs, both of which must be satisfied: (1) all events establishing the fact of liability must have occurred and (2) the amount of the liability must be determinable with reasonable accuracy.

In its motion for partial summary judgment the defendant argues that the plaintiff was only entitled to claim the amount it had actually paid out during the taxable year because, as of the end of that year, plaintiff's liability on the remaining claims was not certain. The defendant argues that ultimate liability was not certain even if all the underlying facts giving rise to the customer's claim were fixed, and that therefore the first prong of the "all events" test was not satisfied.

Plaintiff asserts in its moving papers that it may claim the maximum self-insurance exposure because its liability for the full amount was certain in light of its reasonably accurate estimate of the aggregate of claims arising during the taxable year. In fact, as it was subject to a maximum exposure which was much smaller than the aggregated estimate, plaintiff asserts that its accrued deduction was all the more reasonable and all the more certain.

Plaintiff's argument is not without appeal. In fact, it seems eminently reasonable to assume that plaintiff's uninsured losses for the approximately 5000 claims filed in any one of these taxable years would be the maximum liability it contracted for under the excess coverage agreement with INA. However, while sound business accounting principles is the starting point for computing taxable income, the Supreme Court has noted recently that there is a divergence between tax and financial accounting:

> ... [D]ivergence between tax and financial accounting is especially common when a taxpayer seeks a current deduction for estimated future expenses or losses .... Where the tax law requires that a deduction be deferred until "all the events" have occurred that will make it fixed and certain, *United States v. Anderson*, 269 U.S. 422, 441 [46 S.Ct. 131, 134, 70 L.Ed. 347] (1926), accounting principles typically require that a liability be accrued as soon as it can reasonably be estimated .... Financial accounting, in short, is hospitable to estimates, probabilities, and reasonable certainties; the tax law, with its mandate to preserve the revenue, can give no quarter to uncertainty.

*Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 541–43, 99 S.Ct. 773, 785–86, 58 L.Ed.2d 785 (1979). The certainty of the liability is what determines the taxpayer's right to accrue it, and therefore must precede any consideration of the accuracy of the amount to be accrued.

Here, plaintiff's use of the term "liability" in conjunction with its excess insurance coverage leads it to put the cart before the horse with respect to satisfying the elements of the "all events" test. The "all events" test cannot be met by using an aggregated reasonable estimate of the amount to prove the fact of liability. As I will discuss, the case law does not support an integration of the two prongs of the test. Plaintiff must first prove that its liability to the claimants is fixed and certain. Only then may it prove that the future payments can be ascertained with reasonable accuracy. In addition, as I shall discuss, the first prong must be proven for each customer claim, and may not be based on an aggregate approach.

Plaintiff relies principally upon two lines of cases in support of its position that all the events which made it certain that the plaintiff would be liable for the full amount of its self-insurance occurred during the years the claims were filed in spite of uncertainties as to the exact payments or payees. The plaintiff has likened its deduction for these uninsured claims to the group employee benefit contributions allowed as accrued liabilities in *Lukens Steel Co. v. Commissioner*, 442 F.2d 1131 (3d Cir. 1971) and *Washington Post Co. v. United States*, 405 F.2d 1279 (Ct.Cl.1969).

In *Washington Post*, the taxpayer desired to deduct contributions to a profit incentive plan for dealers in the year in which they were made and not in the year in which they were to be distributed to eligible dealers. While retaining the right to discontinue the profit incentive plan at any time in the future, the taxpayer had under the plan irrevocably obligated itself with respect to any amounts contributed prior to discontinuance. 405 F.2d at 1281. The Court of Claims found this aspect of the plan more significant in terms of the accrual method of tax accounting than the fact that individual members of the plan could not be sure of the amount of their shares:

> We think that neither of [defendant's] theories adequately takes account of one overriding reality in this case: plaintiff is irrevocably bound to pay whatever it accrues to the Fund, and this amount is definitely fixed as of the time of accrual.

*Id.* at 1283.

The certainty of the liability to a group was also central to the Third Circuit's determination in *Lukens* that an employer's contributions to a Supplemental Unemployment Benefits Plan were deductible expenses in the year in which the obligation arose even though payment was deferred. At issue in *Lukens* and several other cases was an industry-wide benefit package

which obligated the steel companies to contribute every month 9.5 cents for each hour worked by eligible employees.

The Third Circuit, in ruling that sufficient events had occurred during the taxable years to fix the obligation, emphasized that the so-called "contingent liability fund" would certainly be paid at some future date. The obligation which was incurred during the taxable year, "once incurred, could not be extinguished, reduced or cancelled or in any other manner revert to the benefit of the steel company." 442 F.2d at 1133. *See also, Crucible Inc. v. United States,* 591 F.2d 643 (Ct.Cl.1979); *Timken Co. v. United States,* 218 Ct.Cl. 633 (1978); *Cyclops Corp. v. United States,* 408 F.Supp. 1287 (W.D.Pa.1976).

██ Here, plaintiff has not shown that it incurred an irrevocable or certain obligation to pay the amount of its maximum self-insurance exposure to the group of claimants at the end of the taxable years in question. Plaintiff has not dedicated this sum of money to, for example, a group settlement fund subject only to apportionment amongst its aggrieved customers. Plaintiff through its claims adjuster, ESIS, handled each claim separately and, obviously failed to settle or satisfy them all by the taxable year's end. Probability that its self-insurance cap would be reached is not equivalent to the certainty of the taxpayer's liability on these injury and property claims which is of "utmost importance" in the "all events" test. *Washington Post, supra,* 405 F.2d at 1284.

In addition to the element of certainty which was present in *Lukens* and *Washington Post* and absent here, another distinguishing factor is that those cases concerned a lump sum liability to a group as opposed to an aggregated liability. The latter method of making an otherwise contingent liability certain and fixed has been held to be unsatisfactory. *See Brown v. Helvering,* 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1934). *See also Eastman Kodak Co. v. United States,* 534 F.2d 252 (Ct.Cl. 1976); *Denver & Rio Grande Western Railroad Co. v. Commissioner,* 38 T.C. 557 (1962).

In *Brown,* the taxpayer was a general agent for fire insurance companies whose income consisted of, in part, the "overriding commissions" on policies written through local agents. The taxpayer sought to deduct from his taxable income, its estimate of the portion of those commissions that would in the future be returned to the companies because of the inevitable cancellation of some policies. The deduction was estimated on the basis of past experience from the ratio of cancellations to premiums receivable. As to any one commission, the Court found that the cancellation loss was a contingent liability because the events necessary to create the liability did not occur during the taxable year. 291 U.S. at 200, 54 S.Ct. at 359. The Court went on to state that aggregating the individual contingencies did not increase the certainty of the liability:

> In respect of no particular policy written within the year could it be known that it would be cancelled in a future year. Nor could it be known that a definite percentage of all the policies will be cancelled in the future years. Experience taught that there was a strong probability that many of the policies written during the taxable year will be so cancelled. But experience taught also that we are not dealing here with certainties.

*Id.* at 201, 54 S.Ct. at 360.

While SGC may be able at trial to convince the court of the strength of the probability of its expending up to the cap each year, I find under *Brown,* an aggregated method will not as a matter of law, be able to transform a contingent liability into a certain one.

Plaintiff, however, refers me to cases involving an employer's liability to its employees in further support of its proposition that all the events which would fix its liability for personal injuries and property damage had occurred by the end of each taxable year whether considered claim by claim or in the aggregate. *See Wien Consolidated Airlines Inc. v. Commissioner,* 528 F.2d 735 (9th Cir. 1976); *Crescent Wharf and Warehouse Co. v. Commissioner,* 518

F.2d 772 (9th Cir. 1975). The plaintiff refers in its brief to language in *Crescent Wharf* that "injury establishes liability whether medical services are rendered or disability occurs at that moment or at a future time." 518 F.2d at 774. However, the Ninth Circuit in *Crescent Wharf* was reversing a judgment of the Tax Court that the fact of an injury to an employee in an *uncontested* case is not sufficient to establish liability. The certainty of the liability, the court found, was assured because the contested claims had all been eliminated from the accrued deduction. Disability and medical services were facts that would have to be examined by the trier of facts during its consideration of whether the taxpayer could satisfy the second prong of the "all events" test. *Id.* at 775.

Similarly in *Wien* the liability of the employer for the death of its employee was statutorily based, and where the employer was not contesting the claim, the liability accrued at the time of injury. The contingency that minor beneficiaries might not survive until age 19 or that widowed beneficiaries might remarry, was found to invoke the second issue of whether the taxpayer's estimate of its liability was reasonably accurate.

Here, SGC is not statutorily liable for these claims *ab initio.* Liability for personal injuries and property damage must be determined either through admission or litigation. The deduction that the plaintiff seeks to take during the years in which the claims were filed is not, therefore, the same as the deductions allowed for uncontested worker's compensation claims. Nor does the plaintiff's letter of January 9, 1976 to INA notifying it that the cap had been reached constitute an admission of liability on the underlying claims. If it did, I am sure the claimants who had not yet concluded settlement negotiations or trials would have been happy to hear the news.

Nor am I convinced that either *Milwaukee & Suburban Transport Corp. v. Commissioner,* 283 F.2d 279 (7th Cir. 1960), *rev'g.* 18 T.C.M. 1039 (1959), *vacated and remanded* 367 U.S. 906, 81 S.Ct. 1917, 6 L.Ed.2d 1249 *on remand* 293 F.2d 628 (7th Cir. 1961), or *Ocean Accident & Guarantee Corp. v. Commissioner,* 47 F.2d 582 (2d Cir. 1931), propels the plaintiff over the first hurdle of the "all events" test. While factually similar to the present setting insofar as they concerned liability on numerous personal injury and property damage claims, neither one has continuing viability in an "all events" taxation contest.

In *Ocean Accident* the taxpayer was an insurance company which sought to deduct an aggregate of estimated losses likely to be suffered on account of accidents reported during the taxable year. The Second Circuit held that "the business of insurance presupposes that the insurer is able to treat as accurately computable and predictable an aggregate of variables no one of which is either computable or predictable." 47 F.2d at 584. While the case appears to be directly on point, the IRS Code subjects insurance companies to a different, more lenient standard than the test of accrual discussed above. *See Modern Home Life Ins. Co. v. Commissioner,* 54 T.C. 935 (1970).

The court of appeals in *Milwaukee & Suburban Transport* likened a self-insured public passenger transportation corporation to a small insurance company because it was subject each year to approximately 5000 claims for personal injuries and property damage, and reversed the Tax Court's denial of an accrued liability deduction for the company's aggregated estimate. 283 F.2d 279 *rev'g.* 18 T.C.M. 1039 (1959). The similarity between the plaintiff's position and that of the transportation company is striking: the case is on all fours.

■ However, the Seventh Circuit's decision was vacated and remanded by the Supreme Court, 367 U.S. 906, 81 S.Ct. 1917, 6 L.Ed.2d 1249 (1961). Upon remand, the court of appeals summarily adopted the original tax court opinion, 293 F.2d 628 (7th Cir. 1961). The tax court had held that a non-insurance taxpayer may not deduct the reserve it has set up for contingent liabilities with respect to contested claims. I agree. Moreover, I do not think it can be disputed that the Supreme Court has implicitly rejected the contrary analysis.

The Supreme Court vacated and remanded *Milwaukee & Suburban Transport* for consideration in light of its decisions in *American Automobile Association v. United States*, 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961) and *United States v. Consolidated Edison Co. of New York, Inc.*, 366 U.S. 380, 81 S.Ct. 1326, 6 L.Ed.2d 356 (1961). At issue in both cases was the first prong of the "all events" test. In both cases, the liability or income sought to be accrued was found to be contingent and not fixed.

In *Consolidated Edison* the Court held that the proper year of accrual and deduction of certain contested real estate taxes is when a court order is entered determining the propriety of the tax. 366 U.S. at 387, 81 S.Ct. at 1330. The logical inference to be drawn from the Court's vacation of *Milwaukee & Suburban Transport* in light of *Consolidated Edison* is that a contested tort claim cannot be deducted in the year in which the injury occurred.

In *American Automobile Association*, the Court did more than just reiterate the holding of *Consolidated Edison*. There the taxpayer sought to defer as unearned income the proportion of membership dues which corresponded to the membership months occurring in a later taxable year. The taxpayer argued that its income would be most accurately reflected if, consistent with its past experience and current accounting practices, it assumed that future services would be rendered on an average monthly basis. The Court rejected the use of such a group or pool basis:

> [F]indings merely reflecting statistical computations of average monthly cost per member on a group or pool basis are without determinate significance to our decision that the federal revenue cannot, without legislative consent and over objection of the Commissioner, be made to depend upon average experience in rendering performance and turning a profit .... [W]e consider similarly unsatisfactory, from an income tax standpoint, allocation of monthly dues to gross monthly income to the extent of actual service expenditures for the same month computed on a group or pool basis.

367 U.S. at 693, 81 S.Ct. 1730.

The logical inference to be drawn, therefore, from the Seventh Circuit's reconsideration of *Milwaukee & Suburban Transport* in light of *Consolidated Edison* and *American Automobile Association* is that a contingent liability cannot be accrued because it is not certain *and* that it cannot be made certain through use of a group or aggregate accounting practice. This is precisely the position the plaintiff takes on its motion today. *See also Gateway Transportation Co. v. United States*, 77–1 U.S.T.C. ¶ 9131 (W.D.Wis.1976).

■ Because I have determined that the Commissioner did not abuse his discretion in finding that the plaintiff cannot satisfy the first prong of the "all events" test on an aggregate basis, I have not reached the second prong. The only issue remaining to be decided on this motion is whether SGC is precluded from proving the right to accrue the liability on a claim by claim basis for those individual claims in which liability was admitted but payment had not been made during the taxable year. The government argues that SGC is precluded because in its refund claim, SGC had put all its eggs into the aggregate basis basket. *See The L.E. Myers Co. v. United States*, 673 F.2d 1366 (1982 Ct.Cl.)

■ However, my reading of the taxpayer's protest convinces me that it has clearly raised the issue of whether these claims can satisfy the "all events" test. In *L. E. Myers*, plaintiff's counsel sought to inject a new issue into an already vague protest. While not setting out examples of allegedly allowable claims, SCG stated:

> The range of types of injuries is very narrow, and few cases are contested. The only issue left for determination is whether the liability can be ascertained with reasonable accuracy. Either on the basis of the analysis of each claim by ESIS or on the basis of the taxpayer's aggregate liability under its policy with INA, the taxpayer's liability relating to tort claims was determinable "with rea-

sonable accuracy" in each year under question.

It would appear that plaintiff's legal theory in its protest was not the intertwined prong theory presented on this motion for partial summary judgment. For what practical worth it may have, I will grant plaintiff leave to prove the certainty of liability on any claims and its accuracy.

In sum, both motions for partial summary judgment are denied. An order in conformance with this opinion has been filed by the Court.